THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD M. HIGLEY, Appellant, against JESS J. MILLSPAW, as Sheriff of the County of Schoharie, Respondent.

442

Argued October 10, 1939; decided November 21, 1939.

*S. J. Mauhs, James A. Leary* and *Walter A. Fullerton* for appellant.

*J. Ernest Wharton, District Attorney* (*Wallace H. Sidney* of counsel), for respondent.

RIPPEY, J.   On August 5, 1938, the relator was indicted in Baltimore, Maryland, for the crime of deserting his wife in that city on the 16th day of May, 1938, and for failure to support and maintain her between the date of the desertion and the date on which the indictment was found.   Upon the requisition of the Governor of Maryland, the Governor of the State of New York issued a warrant on August 29, 1938, for the delivery of relator to the agent of the demanding State together with a direction to any peace officer in the State so authorized to execute the warrant to arrest and deliver the relator into the custody of said agent. The relator was taken into custody by the Sheriff of Schoharie county on August 31, 1938.   A writ of habeas corpus was issued by the County Judge of Schoharie county upon petition of the relator and accompanying affidavits and made returnable before the Supreme Court in and for Schoharie county.   Upon the hearing the Sheriff made his return attaching thereto and making a part thereof the warrant issued by the Governor and all papers that were before the Governor upon which the issuance of the warrant was based and produced the body of the petitioner in court. None of the allegations of fact contained in the petition were specifically denied.   A traverse was duly filed, but no oral evidence was taken on the hearing before the Special Term.   The writ was sustained, whereupon the Sheriff appealed from the order entered thereon to the Appellate Division where the order was reversed upon the law and the facts and the relator remanded to custody.   Since the

reversal by the Appellate Division was stated in the order to be upon the law and the facts and since there were no separate findings of fact and conclusions of law, this court must review the facts as well as the law (Civ. Prac. Act, § 589, subd. 2; *Matter of Edge Ho Holding Corp.*, 256 N. Y. 374; Cohen on Powers of the New York Court of Appeals, § 106).

Interstate extradition is governed by article 4, section 2, clause 2, of the Federal Constitution. By section 5278 of the United States Revised Statutes (U. S. Code, tit. 18, § 662) it is provided, so far as material here, that " whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found * * * charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear." The form of demand is not provided for by the Federal statutes. In section 829 of the New York Code of Criminal Procedure, the Governor of the State of New York is charged with the duty of carrying out the provisions of the Federal Constitution and the acts of Congress enacted in pursuance thereof. The form of demand is provided for in section 830 and, so far as material, reads: " No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, * * * and accompanied by a copy

of an indictment found * * *, together with a copy of any warrant which was issued thereon," etc. It is also provided that the indictment must substantially charge the person demanded with having committed a crime under the law of the demanding State and that a copy of the indictment must be authenticated by the executive authority making the demand.

There may be determined in this proceeding questions as to (1) whether the papers upon which the warrant was issued by the Governor of the asylum State are sufficient, (2) whether the indictment charges a crime under the laws of the State seeking the extradition, (3) whether the crime was committed in the demanding State under its laws, (4) whether the accused was in the demanding State on the day when the crime is alleged to have been committed, (5) the identity of the alleged fugitive, (6) whether the person sought to be extradited is a fugitive from justice (*People ex rel. Corkran* v. *Hyatt*, 172 N. Y. 176; *Roberts* v. *Reilly*, 116 U. S. 80, 95; *Pettibone* v. *Nichols*, 203 U. S. 192; *Hogan* v. *O' Neill*, 255 U. S. 52, 56; *People ex rel. Plumley* v. *Higgins*, 109 Misc. Rep. 328). We may not consider the question of the sufficiency of the indictment as a pleading (*Hogan* v. *O' Neill, supra*) nor the possibilities resulting from the trial (*Drew* v. *Thaw*, 235 U. S. 432) nor the merits of the defense to the indictment or the motive and purpose of the extradition proceedings (*Drew* v. *Thaw, supra; Smith* v. *Gross*, 2 Fed. Rep. [2d] 507; certiorari denied, 267 U. S. 610; *Matter of Bloch*, 87 Fed. Rep. 981; *Commonwealth* v. *Superintendent*, 220 Penn. St. 401; *Edmunds* v. *Griffin*, 177 Iowa, 389).

The identity of the relator is not questioned. Although there is no proof of the laws of the State of Maryland, we can examine and determine for ourselves what those laws are (Civ. Prac. Act, § 391) and the crime charged is an indictable offense under the laws of the State of Maryland (Flack's 1935 Supplement to the Annotated Code of the Public General Laws of Maryland, art. 27, § 87, p. 314). The demand of the Governor of Maryland did not con-

tain the statement required by section 830 of the Code of Criminal Procedure that the accused was present in the demanding State at the time of the commission of the alleged crime. Technically, the demand was insufficient. There was, however, presented to the Governor of New York, accompanying the demand and as the basis for its issuance, a certified copy of the indictment in which it appears that relator was in Baltimore, Maryland, when the crime was committed, the statement to the Governor by the State's Attorney for the city of Baltimore, in which he refers to an affidavit by the wife of the relator, also accompanying the demand, that " Edward M. Higley the person indicted as appears by the annexed papers, was in this State [Maryland] at the time of the commission of said crime, that he is a fugitive from justice, having fled this State since the commission of said crime and that he is now in the City of Cobleskill, in the State of New York," and the due appointment of an agent to take the accused from the authorities of this State. Thus the Governor of New York had before him all the requisite facts to justify him in issuing the warrant of rendition (*People ex rel. Lawrence* v. *Brady*, 56 N. Y. 182, 186; *Matter of Reggel*, 114 U. S. 642, 653; *Roberts* v. *Reilly*, 116 U. S. 80, 95).

Whether the accused was in the demanding State when the crime was committed and whether he is a fugitive from justice were questions of fact before the Governor and are questions of fact here (*Roberts* v. *Reilly, supra*). It is competent for the courts of this State to inquire whether he is, *in fact*, a fugitive from justice and to declare the warrant void and to discharge him from custody and to prevent his rendition to the demanding State if it be found that he is not a fugitive from justice (*People ex rel. Corkran Hyatt*, 172 N. Y. 176; *Pettibone* v. *Nichols, supra; Matter of Smith*, 3 McLean [U. S. Circuit Ct. Rep.], 121). A fugitive from justice is defined to be " a person who commits a crime within a state, and withdraws himself from such jurisdiction without waiting to abide the consequences of such act " (*Matter of Voorhees*, 32 N. J. L. 141, 150). No

one can be held to be a fugitive from justice unless he was in the demanding State when the crime was committed (*Hyatt* v. *People ex rel. Corkran*, 188 U. S. 691, 712, 713). There were two counts in the indictment. The first count charged that the relator deserted his wife in Baltimore, Maryland, on the 16th day of May, 1938. The second count charged that the relator neglected to provide for the support and maintenance of his wife from the 16th day of May, 1938, to the 5th day of August, 1938, the date of the finding of the indictment. The offense of non-support may exist under the laws of Maryland without desertion (*Wald* v. *Wald*, 161 Md. 493, 498). It is essential here to show on either count the *personal presence* of the accused in the demanding State when the crime is alleged to have been committed, without proof of which there can be no interstate rendition (*People ex rel. Gottschalk* v. *Brown*, 237 N. Y. 483; *Matter of Reggel*, 114 U. S. 642, 651; *Hyatt* v. *People ex rel. Corkran*, 188 U. S. 691).

The relator, in his petition, made all papers that were before the Governor a part thereof by reference. At Special Term the respondent relied on the papers that were before the Governor of New York, together with the return to the writ and the warrant, to make out a *prima facie* case (*People ex rel. Corkran* v. *Hyatt*, 172 N. Y. 176). It then became necessary for the relator to establish by *conclusive* evidence that he was not in the demanding State when the crime was committed and is not a fugitive from justice (*People ex rel. Gottschalk* v. *Brown, supra; People xe rel. Fong* v. *Honeck,* 253 N. Y. 536). The evidence for respondent that relator was in the demanding State when the crimes were committed is furnished by the statement in the indictment and in the affidavit of his wife to which reference has been made above. Otherwise there is no denial of any of the facts set up in the petition and accompanying affidavits. On the point under consideration the petitioner shows in the verified petition, made a part of and repeated in the traverse to the return, that his wife was the only witness before the

grand jury which found the indictment; that he is now twenty-nine years old and his wife twenty-four; that they were married September 7, 1935, and that there are no living or prospective children of the marriage; that the parties were and are residents of the State of New York; and that he was not in the State of Maryland on May 16, 1938, the date when the crime was committed, or since. There is presented also the affidavit of petitioner's attorney which the petitioner asserted was made a part of the petition with the same force and effect as though all the facts, statements and circumstances therein set forth were specifically detailed in the petition. From the petition and the affidavit the further facts appear: Immediately following the marriage the parties took up their residence in Niagara Falls, New York, where the petitioner had a financial interest in and was an officer of a manufacturing corporation. His wife did not wish to live in Niagara Falls, which was petitioner's place of business, and made frequent and extended trips to Baltimore, where she visited her parents. In September, 1937, Mrs. Higley left Niagara Falls and told petitioner that she did not intend to return. Following correspondence between relator and his wife, in December, 1937, the former left Niagara Falls and his employment to join his wife in Baltimore with a view to ascertaining whether he could obtain employment there. Being unable to obtain employment the relator returned to Niagara Falls in April, 1938, and thereupon wrote to his wife and advised her that he was about to take up his old residence and requested her to return to their home in Niagara Falls. The wife failed to answer the letter but her attorney opened negotiations with attorneys representing relator in Niagara Falls for a separation agreement and alimony and financial support for the wife. It is asserted that these negotiations between the attorneys continued either at Niagara Falls, New York city or Baltimore until July 29, 1938, when a separation agreement was duly signed and executed and delivered to Mrs. Higley's attorney, whereby it was agreed that the relator should pay to his wife a certain sum of money and

deliver to her certain personal property and that the proceedings before the courts in Maryland should be discontinued and the indictment dismissed. It is asserted that on that day the State's Attorney of Baltimore and the judge of the Criminal Court duly approved the settlement and adjustment and that the indictment was at that time in fact dismissed. It further appears that checks for the amount provided to be paid to the wife were delivered to her attorney. It is alleged that Mrs. Higley thereupon changed her mind and desired more money, as a result of which her attorney refused to deliver the executed agreement to relator to whom the checks were thereafter returned and relator's attorneys thereupon commenced an action for a separation in the State of New York against his wife. It is alleged that the wife said immediately prior to the making of the requisition by the Governor of Maryland and upon the service of the summons and complaint in the separation action: " I do not want any settlement or support, what I want is the satisfaction of bringing him back here." These and the records of the correspondence and dealings between the parties were made a part of the petition and were before the justice at Special Term when he made his findings. The papers presented by the relator corroborate his assertion that he was not in the State of Maryland subsequent to April, 1938. Upon the whole record it seems that relator has overcome the presumption raised by the warrant by the required weight of the evidence demanded by the authorities that the relator was not in the demanding State at the time the crime was committed and, consequently, that he is not a fugitive from justice.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, the warrant of the Governor of the State of New York declared void and the relator discharged from custody.

CRANE, Ch. J., HUBBS, LOUGHRAN and FINCH, JJ., concur; LEHMAN, J., dissents; O'BRIEN, J., taking no part.

Ordered accordingly.