OPINION OF THE COURT
Bellacosa, J.
Leroy Strachan was indicted in March 1990 by the State of Florida for murder in the first degree, a capital offense, for the *501 killing of Police Officer John Milledge in Miami in 1946. At the time of the crime, Strachan was 17 years of age. In March 1990, the Governor of Florida requested that Strachan be extradited from New York to Florida for trial. New York’s Governor executed the extradition order in April 1990 and Strachan turned to the courts of New York for habeas corpus relief.
Milledge was shot and killed by a single rifle bullet in the neck while on duty outside a football stadium in Miami. It is conceded that Strachan was in Miami the day of the killing. The next day he went to New York City to stay with family and has lived in New York under his true name since then. He has been employed, paid taxes and raised a family; he has returned to visit relatives living in Miami on several occasions. Although he immediately became a suspect in the 1946 murder and the Miami police possessed information that he had gone to New York, the Florida authorities made no effort to locate or pursue him. The homicide investigation was eventually closed as an unsolved case. It was reopened in July 1989 after someone telephoned Miami police with information about the murder. The caller subsequently gave Florida police a sworn statement in August 1989 about her observations the night of the murder. Miami police thereafter located and met with Strachan in New York, where he gave them a taped statement admitting he had shot the officer in Miami and had moved to New York the next day.
Strachan was arrested in New York on February 15, 1990 and has been held since then without bail on a fugitive warrant issued by a Florida court. Strachan’s petition for a writ of habeas corpus was dismissed without a hearing, and the Appellate Division unanimously affirmed and then granted leave to appeal to our Court. We now also affirm and agree that Strachan is not entitled to habeas corpus relief in these circumstances.
Strachan argues that extradition for trial in Florida will deny him due process of law because of the unreasonable 44-year preindictment delay; that he is not a fugitive from justice; and that his case constitutes "most unusual circumstances” as contemplated by People ex rel. Little v Ciuros (44 NY2d 825, 826), entitling him at least to a hearing in New York State so he can raise his constitutional claims before he is extradited out of its protective domain.
Extradition is mandated by the Federal Constitution (US *502 Const, art IV, § 2, cl 2), Federal statute (18 USC § 3182), and State law (CPL 570.06). The explicit language of the Extradition Clause furthers its intended purpose to enable the several States to try offenders in the respective States where alleged offenses are committed (Puerto Rico v Branstad, 483 US 219, 226-227; Michigan v Doran, 439 US 282, 287; Biddinger v Commissioner of Police, 245 US 128, 132), and "to preclude any state from becoming a sanctuary for fugitives from justice of another state” (Michigan v Doran, supra, at 287; Biddinger v Commissioner of Police, supra, at 132-133).
It is also well established that once the Governor of an asylum State has directed extradition, "a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.” (Michigan v Doran, 439 US, supra, at 289 [emphasis added]; see also, California v Superior Ct., 482 US 400, 408; Hyatt v People ex rel. Corkran, 188 US 691; Roberts v Reilly, 116 US 80, 95; People ex rel. Neufeld v Commissioner of N. Y. City Dept. of Correction, 71 NY2d 881, affg on opn below 132 AD2d 720, 721; People ex rel. Higley v Millspaw, 281 NY 441, 445.)
Strachan’s central challenge to the satisfaction of these requirements is that he did not "flee from justice” and, therefore, is not a "fugitive from justice” within the constitutional meaning of the Extradition Clause. He essentially contends that he is not a fugitive because no criminal charges were lodged against him at the time he left Florida in 1946 and Florida authorities did not pursue him or charge him with this crime for the next 44 years.
A fugitive from justice is " 'a person who commits a crime within a state, and withdraws * * * from such jurisdiction without waiting to abide the consequences’ ” (People ex rel. Higley v Millspaw, 281 NY, supra, at 446 [cite omitted]; see also, Hogan v O’Neill, 255 US 52, 56; Strassheim v Daily, 221 US 280, 285). The United States Supreme Court has declared that a fugitive from justice need not have departed from the demanding State "after an indictment * * * or for the purpose of avoiding a prosecution”; the simple requirement is that the accused, having committed a crime in a demanding State, is present in an asylum State when a demanding State *503 seeks to prosecute the offense (Roberts v Reilly, 116 US, supra, at 97; People v Hinton, 40 NY2d 345, 350). This requirement "has nothing to do with the defendant’s state of mind at the time he departed” (id., at 350) and "it does not matter what motive induced the departure.” (Drew v Thaw, 235 US 432, 439.)
The constitutional, statutory and precedential requirements in this respect are met here: Strachan is accused of a crime in Florida; he concedes he was in Florida at the time the crime charged was committed; he left Florida after the crime; he was found in this State when prosecution was sought. That he had not been charged with this crime at the time of his departure and was not sought by Florida officials for 44 years while he lived openly in this State does not diminish his fugitive status as that term of art is used in extradition jurisprudence. While Strachan is entitled in the asylum State courts to challenge the Governor’s rendition warrant on the grounds he is not a fugitive (California v Superior Ct., 482 US, supra, at 408), he has not overcome the unequivocal, documented proof that he is a fugitive.
Strachan also strongly pleads that the 44-year preindictment delay by the State of Florida will deprive him of due process if he is extradited for trial in Florida. This constitutional assertion may not be raised within the limited scope of the extradition proceeding in this asylum State (People ex rel. Little v Ciuros, 44 NY2d, supra, at 826). We have stated the rule that in "all but the most unusual circumstances such prospective claims may not be invoked in an asylum State for the purpose of preventing extradition, and when faced with such prospective claims the court need not embark upon an inquiry of their validity” (id. [cite omitted]; see also, California v Superior Ct., 482 US, supra, at 407; Michigan v Doran, 439 US, supra, at 288, 290; Biddinger v Commissioner of Police, 245 US, supra, at 135). New York courts may not prognosticate whether courts in sibling States will deprive an extraditee of due process in these circumstances. These prospective challenges "are left to the prosecutorial authorities and courts of the demanding State, whose duty it is to justly enforce the demanding State’s criminal law — subject, of course, to the limitations imposed by the Constitution and laws of the United States.” (California v Superior Ct., 482 US, supra, at 408, citing Biddinger v Commissioner of Police, 245 US 128, 135, supra; Drew v Thaw, 235 US, supra, at 440.) We conclude that this case does not qualify for the "most unusual circum *504 stances” exception for a judicial hearing of an extraditee’s prospective constitutional claims (People ex rel. Little v Ciuros, 44 NY2d, supra, at 826). The courts of an asylum State are obliged, except in the rarest, most egregious circumstance, to respect the due process potentiality and renderings of other demanding States, just as asylum States would expect reciprocal respect if the roles were reversed.
Significantly, Strachan has not submitted any "factual affidavits reflecting clear evidence that gross irreparable harm would result if the petition is denied” or that "effective access to State and Federal courts in the demanding State would not be available.” (People ex rel. Little v Ciuros, supra, at 827; see also, People ex rel. Neufeld v Commissioner of N. Y. City Dept. of Correction, 71 NY2d, supra, at 885 [concurring opn].) It is the sheerest speculation to conclude Strachan will not receive fair and due process consideration with respect to all his claims, including his argument of unparalleled preindictment delay. He is required, therefore, to raise these claims and defenses in the courts of Florida "where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned.” (Sweeney v Woodall, 344 US 86, 90.) Otherwise the sanctuary of an asylum State may also promote invidious forum shopping among States offering more generous or different constitutional interpretations. This, too, should not be encouraged in this extradition field of law.
We agree with the courts below that in this case the "Governor’s failure to conduct a formal hearing prior to authorizing the extradition of [Strachan] does not constitute a due process violation” (see, People ex rel. Neufeld v Commissioner of N. Y. City Dept. of Correction, 132 AD2d 720, 721, affd on opn at App Div 71 NY2d 881, supra, citing People ex rel. Morris v McGrath, 23 NY2d 703). That a capital offense is charged by the demanding State does not by itself mandate a hearing where there is no record evidence indicating that an "irreparable miscarriage of justice would result from the denial of the petition” (id.). In allowing Strachan to be delivered to the authorities of a sibling State, we are "simply returning him to be tried, still under the protection of the Federal Constitution but in the manner provided by the State against the laws of which it is charged that he has offended.” (Biddinger v Commissioner of Police, 245 US, supra, at 133.)
Some of the circumstances surrounding this case may be *505 characterized as sympathetic, but Strachan’s speculations about political motivations for his prosecution and extradition are no substitute for well-settled and well-applied principles of law considered in the context of a record consisting only of evidence. For reasons of comity and of constitutional and statutory mandate, an asylum court cannot arrogate jurisdiction to itself to decide an extraditee’s claims of this nature (California v Superior Ct., 482 US, supra, at 412; Drew v Thaw, 235 US, supra, at 439-440; People ex rel. Higley v Millspaw, 281 NY, supra, at 445).
Accordingly, the order of the Appellate Division should be affirmed, without costs. This determination shall not take effect for 10 days.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, without costs. The stay in existence is continued until April 14, 1991, the date on which the remittitur of this Court shall issue.